IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BRIGHTVIEW LANDSCAPES, LLC**, <br><br> Plaintiff, <br><br> v. <br><br> **MICHAEL IATZKO,** <br><br> Defendant. | **CIVIL ACTION** <br><br><br> **NO. 25-2013-KSM** |

<u>MEMORANDUM</u>

**Marston, J.**                                                                                      **June 18, 2025**

Plaintiff BrightView Landscapes, LLC brings a breach of contract claim against its former Business Development Executive, Defendant Michael Iatzko. (Doc. No. 1.) BrightView claims Iatzko violated the noncompetition, nondisclosure, and non-solicitation provisions in his employment contract when he began working for BrightView's competitor, nonparty Continuum Services, in a business development capacity. (*Id.* at ¶¶ 1–10.) Iatzko has filed a partial motion to dismiss, which seeks dismissal of BrightView's contract claim to the extent it is premised on alleged violations of the nondisclosure and non-solicitation provisions in the contract. (Doc. No. 14.) BrightView opposes that motion. (Doc. No. 18.) For the reasons discussed below, Iatzko's motion is granted.

I.     **FACTUAL BACKGROUND**

   A.     **Iatzko's Employment at BrightView**

Iatzko began working for BrightView, one of the nation's leading commercial landscape companies, in 2018 as an Account Manager and eventually worked up to the role of Business Development Executive. (Doc. No. 1 at ¶¶ 1–2, 26–30.) As an Account Manager, Iatzko was

responsible for client satisfaction in a territory that covered southeastern Michigan and northwestern Ohio. (*Id.* at ¶¶ 2, 28.) When he was promoted to Business Development Executive, his responsibilities expanded to include improving BrightView's market position and helping it achieve profitable financial growth in the territory. (*Id.* at ¶ 32.) Among other things, Iatzko was "involved in estimating costs for potential projects, developing pricing and bids, and handling contract negotiation." (*Id.* at ¶ 3.)

Unsurprisingly, these job responsibilities meant Iatzko was privy to a "wide range of confidential information that BrightView uses to succeed in the highly competitive commercial landscaping industry," including "the identities of the precise individuals at BrightView's customers who make purchasing and contracting decisions; the annual spend of its customers; service issues, if any, that such customers may be encountering; BrightView's labor costs; BrightView's project estimator model; BrightView's pricing; discounts, rebates, and pricing that BrightView receives from vendors; and BrightView's target profit margins." (*Id.* at ¶¶ 3–4; *see also id.* at ¶ 5 (estimating that when Iatzko voluntarily resigned, "he possessed confidential information about 80-90% of the customers in [his] territory. . . representing millions of dollars annually in revenues").) Accordingly, Iatzko was required to sign BrightView's Confidentiality, Noncompetition, and Non-solicitation Agreement (the "Agreement"). (*Id.* at ¶ 6.)

The Agreement contains three restrictive covenants relevant to this litigation. (*Id.* at ¶ 7.) *First*, § 5 of the Agreement outlines BrightView's noncompetition provision:

> **Non-Competition.** Team member agrees that during team member's employment and for a period of one (1) year following the voluntary or involuntary termination of team member's employment for any reason . . ., team member will not, directly or [i]ndirectly, own, manage, operate, join, control, be employed by or with, or participate in any manner with a Competing Business anywhere in the Restricted Territory where doing so will require team member to provide the same or substantially similar services

        to a Competing Business as those that team member provided to BrightView during the Look Back Period o[r] such other services that would result in the use or disclosure of Confidential Information. The foregoing is also limited to providing services in the area(s) of BrightView's business as to which team member had material business related involvement or received Confidential Information during the Look Back Period.

(Agreement at § 5.)

The Agreement provides specific definitions of "Competing Business," "Restricted Territory," and "Confidential Information." To start, "Competing Business" is defined as "any individual (including team member), corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, that is directly engaged in whole or in relevant part in any business or enterprise that is the same as, or substantially the same as, any part of the Business of BrightView, or that is taking material steps to engage in such Business." (*See id.* at § 1(b).) Next, "Restricted Territory" is defined as "the geographic territory in which team member worked, represented BrightView, or had Material Business Contact[1] with BrightView's Customers[2] in the Look Back Period.[3]" (*See id.* at § 1(g).) Last, "Confidential Information" is defined as any "(i) competitively sensitive information, (ii) of importance to BrightView, and (iii) that becomes known to team member through his or her employment with BrightView." (*See id.* at § 1(c).) The phrase includes "Trade Secrets, but an item of

---

[1] The Agreement defines "Material Business Contact" as "contact that is intended to establish or strengthen a business or professional relationship for BrightView, regardless of whether the contact is with a Customer directly assigned to team member or a Customer with which team member otherwise has contact in furtherance of the team member's job duties." (Agreement at § 1(f).)

[2] The Agreement defines "Customer" as "those individuals, companies, or other entities for whom BrightView has provided or does provide products or services in connection with the Business of BrightView or to whom BrightView has provided written proposal concerning the Business of BrightView and as to which team member has had Material Business Contact or received Confidential Information [during the Look Back Period]." (Agreement at § 1(d).)

[3] The "Look Back Period" is "the two (2) year period preceding the voluntary or involuntary termination of team member's employment with BrightView for any reason." (Agreement at § 1(d).)

Confidential Information need not rise to the level of Trade Secret in order to be protected from disclosure by th[e] Agreement." (*Id.*) And the Agreement notes that "Confidential Information includes, but is not limited to, information about: BrightView's operations, services, and research and development of BrightView's operations or services; names and other listings of current or prospective Customers, [including] the terms of any arrangements or agreement with any Customers, including payment and pricing information, . . . ; financial and sales information; and the technical expertise and know-how developed by BrightView, including the unique manner in which BrightView conducts its business." (*Id.*)

*Second*, § 3 of the Agreement prohibits the disclosure of Confidential Information:

> **Non-Disclosure and Non-Use of Confidential Information and Trade Secrets.** During the term of team member's employment and following the voluntary or involuntary termination of team member's employment for any reason . . ., team member will not, except as authorized and required to perform team member's duties for BrightView, directly or Indirectly: use, disclose, reproduce, distribute, or otherwise disseminate BrightView's Confidential Information and Trade Secrets, or take any action causing or failing to prevent any such information to lose its character or cease to qualify as Confidential Information or a Trade Secret. . . This prohibition applies regardless of whether the Confidential Information or Trade Secret was acquired before the effective date of this Agreement or thereafter.

(Agreement at § 3.)

*Third*, § 6 of the Agreement provides that Iatzko will not solicit BrightView's customers:

> **Non-Solicitation of Customers.** Team member agrees that during team member's employment for a period of two (2) years following the voluntary or involuntary termination of team member's employment for any reason . . ., team member will not, either on behalf of team member or for any Competing Business, directly or Indirectly solicit, divert, or appropriate, or attempt to solicit, divert, or appropriate any Customer or accept any business from any Customer with whom team member had Material Business Contact in the Look Back Period, for the purposes of providing services that

    are the same as or substantially similar to those provided in the
    Business of BrightView.

(Agreement at § 6.)

### B. Iatzko's Employment at Continuum

In January 2025, Iatzko voluntarily resigned from BrightView and began working for Continuum Services in a business development role. (Doc. No. 1 at ¶¶ 8, 59.) Because Continuum also provides commercial landscaping services, it is a "Competing Business" under the Agreement. (*Id.*) And because Iatzko is assigned to Continuum's metro Detroit area, BrightView alleges that he is working "squarely" within the "Restricted Territory" as that phrase is defined in the Agreement. (*Id.* at ¶¶ 9–10.) As such, BrightView believes Iatzko's new employment violates the Agreement's noncompetition provision. BrightView also asserts that Iatzko has violated, or is at risk of violating, the nondisclosure and non-solicitation provisions. (*Id.* at ¶¶ 81–82.)

## II. PROCEDURAL HISTORY

On April 22, 2025, BrightView initiated this breach of contract action against Iatzko. (Doc. No. 1.) BrightView claims that Iatzko has breached the noncompetition, nondisclosure, and non-solicitation provisions in the Agreement by: (1) working for a "Competing Business" in a "Restricted Territory" in violation of § 5 of the Agreement, (2) providing services for Continuum that are resulting, or will result, in the use or disclosure of BrightView's "Confidential Information" in violation of § 3 of the Agreement, and (3) directly or indirectly soliciting or attempting to solicit customers "with whom Iatzko had Material Business Contact during the last two years of his employment with BrightView" in violation of § 6 of the Agreement. (Doc. No. 1 ¶¶ 80–82). Only the second and third claims are at issue here.

On May 5, 2025, Iatzko filed a partial motion to dismiss, which challenges BrightView's breach of contract claim to the extent it is based on the nondisclosure and non-solicitation provisions. (Doc. No. 14.) BrightView opposes that motion. (Doc. No. 18.)

## III.    LEGAL STANDARD

Iatzko moves for partial dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).[4] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Put differently, this pleading standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) (quoting *Phillips v. County of Allegheny*, 515

---

[4] BrightView contends that the motion is more properly considered as a motion to strike under Federal Rule of Civil Procedure 12(f) because Rule 12(b)(6) does not allow a defendant to move to dismiss "one or two allegations that are made in connection with part of a claim." (Doc. No. 18 at 18.) Stated differently, BrightView appears to argue that because (1) the Complaint brings a single claim for breach of contract that encompasses three independent breaches (i.e., the noncompete, nondisclosure, and non-solicitation provisions), and (2) Iatzko has moved to dismiss that claim only as to two of the alleged breaches, then (3) a motion to strike the allegations related to the two breaches, not a motion to dismiss, is the proper course. The Court disagrees. Here, although BrightView brings only a single count for breach of contract, that count includes multiple claims, each with its own specific request for relief—e.g., breach of the non-solicitation agreement and a request for an injunction prohibiting such solicitation. As such, each breach may be considered an independent claim, regardless of how BrightView chose to format its Complaint, and Defendants have correctly filed a partial motion to dismiss pursuant to Rule 12(b)(6).

Likewise, to the extent Brightview meant to suggest that these two claims survive dismissal because they are included in the same count as BrightView's noncompetition claim, which is properly pleaded, that argument also fails. (*Id.* at 17–19.) The Federal Rules cannot reasonably be read to allow multiple insufficiently pleaded claims to survive dismissal simply because they are lumped together with at least one properly pleaded claim.

F.3d 224, 234 (3d Cir. 2008)).  In performing this analysis, the court accepts "the allegations in the complaint as true, but [is] not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation."  *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (quotation marks omitted).

IV.  **DISCUSSION**

"To state a claim for breach of contract under Pennsylvania law, a plaintiff is required to plead:  (1) the existence of a contract, including its essential terms, (2) a breach of duty imposed by the contract, and (3) resultant damages."  *N. Penn Towns, LP v. Concert Golf Partners, LLC*, 554 F. Supp. 3d 665, 714 (E.D. Pa. 2024) (citations omitted).  Iatzko focuses on the second element, arguing that BrightView has failed to allege breaches of the Agreement's nondisclosure and non-solicitation provisions.  (Doc. No. 14-1 at 5.)  BrightView counters that it has properly pleaded such violations upon information and belief and "[m]ore specific information about these breaches is in the exclusive purview of Iatzko and/or Continuum and can only be obtained through discovery."  (Doc. No. 18 at 5.)  The Court agrees with Iatzko.

The Third Circuit recognizes that allegations based "upon information and belief" may be sufficient to state a claim if "the requisite factual information is peculiarly within the defendant's knowledge or control" and the plaintiff "accompan[ies its] legal theory with factual allegations that make [its] theoretically viable claim possible."  *McDermott v. Clondalkin Grp., Inc.*, 649 Fed. App'x 263, 267–68 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216) (citation omitted); *W. Short Home, LLC v. Graeser*, 661 F. Supp. 3d 356, 375 (M.D. Pa. 2023) ("As long as plaintiffs 'accompany their legal theory with factual allegations that make their theoretically viable claim plausible,' their claims may survive the motion to dismiss stage; as always, 'boilerplate and conclusory allegations will not suffice.'" (quoting *In re*

7

*Rockefeller Ctr.*, 311 F.3d at 216)). Under this formula, a complaint that is "light on substantive factual allegations" may still be sufficient so long as it "put[s] forth factual assertions that, if ultimately proven to be true, would give rise to a breach of contract claim." *DePuy Synthes Sales, Inc. v. Globus Medical, Inc.*, 259 F. Supp. 3d 225, 241 (E.D. Pa. 2017).

BrightView argues that its allegations are sufficient because the Complaint alleges that Iatzko had access to BrightView's confidential information, and "[u]pon information and belief": (1) "the services that Iatzko is providing for Continuum [are] resulting, or will result in, the use or disclosure of BrightView's Confidential Information," and (2) "Iatzko has directly or Indirectly (as defined by the Agreement) (a) solicited, diverted, or appropriated, (b) attempted to solicit, divert, or appropriate, or (c) threatens to solicit, divert, or appropriate one or more Customers with whom Iatzko had Material Business Contact during the last two years of his employment with BrightView." (*See* Doc. No. 18 at 15 (quoting Doc. No. 1 at ¶¶ 81–82).) The problem with these assertions is that they assume, without any factual support, that because Iatzko had access to confidential information while working at BrightView and later resigned to go work for a competitor in a similar capacity, he has likely disclosed that information and solicited BrightView's clients in violation of the Agreement. But if that were true, a plaintiff would almost always be able to state a claim for breach of restrictive covenants based on little more than access and speculation. That is why numerous courts have found similar allegations to be insufficient. *See Bioquell, Inc. v. Feinstein*, Civil Action No. 10–2205, 2010 WL 4751709, at *5 (E.D. Pa. Nov. 23, 2019) ("The very verbiage used in Plaintiff's Complaint demonstrates that it lacks a basis for the allegations made in counts two and seven. In support of these allegations Plaintiff states that it believes that Defendants Feinstein and Buscher have 'disclosed or inevitably will disclose confidential trade secret information.' These bald assertions do not

8

suffice to allow this Court to draw the inference that Defendant Feinstein and Buscher are liable for the breach of the confidentiality provisions of the Employment Agreement. (internal citation omitted)); *Pittsburgh Logs. Sys., Inc. v. LaserShip, Inc.*, 2:18-cv-1382, 2019 WL 2443035, at *13 (W.D. Pa. June 12, 2019) ("The only details regarding any alleged misappropriation is that 'PLS believes and therefore avers that Mr. Herberger has or will use such information for LaserShip's benefit in competition with PLS.' This statement cannot support a conclusion that any trade secrets were or will be misappropriated, even if PLS's belief were taken as true." (citations omitted)); *J&J Snack Foods Corp. v. Ruiz Food Prods., Inc.*, Civil No. 15-7804 (JBS/AMD), 2016 WL 781454, at *5 (D.N.J. Feb. 29, 2016) ("The Complaint fails to allege the factual grounds for its claim of breach of the Confidentiality Agreement that would tend to give plausibility to the general allegation of breach. Which provisions of the Confidentiality Agreement were breached? Has Ruiz failed to destroy or return the data upon demand? Has Ruiz improperly used the data for its competitive advantage and in what ways? Has Ruiz threatened to improperly use or disclose such information? Defendant is entitled to such specification before the claim for breach of the Confidentiality Agreement can go forward against it.").

*DePuy Synthes Sales, Inc. v. Globus Medical, Inc.* is instructive. There, the plaintiff alleged that multiple former sales consultants began working for a competitor and that, upon information and belief, they and their new employer "intend[ed] to 'flout and interfere with the Sales Consultants' non-competition and non-solicitation obligations." 259 F. Supp. at 232. The plaintiff claimed the consultants had access to the plaintiff's confidential information while working for plaintiff and had "undertaken unlawful competitive activities and begun soliciting [the plaintiff's] customers on behalf of [their new employer] prior to their resignation." *Id.* In

9

addition to these conclusory statements, however, the complaint also alleged facts to support an inference that the consultants had been wrongfully soliciting the plaintiff's customers—on the day the consultants began their new employment, "several surgical cases that had previously been scheduled for the use of [the plaintiff's] spine products were converted to [the new employer]," a conversion which would have "required advanced planning, including the delivery and preparation of surgical trays and sets containing [the new employer's] products for use in the surgery and staffing by [the new employer] to cover the surgery." *Id.* Based on these key allegations, the court found the plaintiff had plausibly stated a clam for breach of contract. *Id.* at 241; *see also Axalta Coating Systems, LLC v. Peck*, CIVIL ACTION No.: 20-cv-5655, 2021 WL 3026856, at *13 (E.D. Pa. Jan. 22, 2021) (finding the plaintiff stated a claim where it alleged, among other things, that the defendant "misappropriated trade secrets when he emailed to his personal account a 2020 monthly sales forecast, and, most egregiously, a list of all key powder coatings [for] customers of [the plaintiff] along with highly confidential and non-public revenue information" and also that the defendant "accessed a number of additional confidential documents and [plaintiff's] Trade Secrets in the days leading to his resignation, and engaged in unusual and suspicious flash drive activity . . . shortly prior to his resignation" (quotation marks and citations omitted)); *Jazz Pharms., Inc. v. Synchrony Grp., LLC*, 343 F. Supp. 3d 434, 445 (E.D. Pa. 2018) (finding the allegations "move[d] beyond speculation" when the plaintiff alleged that the defendant failed to return all of its confidential information and that the defendant "obtained [a competitor's] business by 'using, touting, and sharing" the plaintiff's confidential information regarding "marketing strategies and tactics" with the competitor); *W. Short Home, LLC*, 661 F. Supp. 3d at 372 (finding the plaintiff had "amply met its [pleading] burden" when it alleged that the defendant had forwarded the plaintiff's confidential documents to a personal

email address before resigning and later spoke with the plaintiff's client about that confidential information while soliciting the client to switch to his new employer).

Unlike the complaints in *DePuy*, *Axalta Coating Systems, West Short Home*, and *Jazz Pharmaceuticals*, BrightView's Complaint lacks any factual allegations from which the Court can plausibly infer that Iatzko violated (or is likely to violate) the nondisclosure and non-solicitation provisions in the Agreement.  There is nothing to suggest, for example, that Iatzko left the company with a thumb drive containing confidential information, has confidential documents that he is refusing to return, has spoken with BrightView's clients about BrightView's confidential information, has solicited any BrightView client to switch to Continuum, or that BrightView has lost any customer to Continuum since Iatzko began working there.[5]  Instead, the Complaint states in conclusory fashion that "the services that Iatzko is providing for Continuum [are] resulting, or will result in, the use or disclosure of BrightView's Confidential Information," and that "Iatzko has directly or Indirectly . . . solicited . . . , attempted to solicit, . . . or threaten[ed] to solicit" BrightView's customers.  (*See* Doc. No. 18 at 15 (quoting Doc. No. 1 at ¶¶ 81–82).)  Because that is not enough, the Court will grant Iatzko's partial motion to dismiss.  *See Bioquell, Inc.*, 2010 WL 4751709, at *5; *Pittsburgh Logs. Sys., Inc.*, 2019 WL 2443035, at *13; *J&J Snack Foods Corp.*, 2016 WL 781454, at *5.

---

[5] In its brief, BrightView references Iatzko's first set of discovery requests, arguing that they suggest "Iatzko is calling on BrightView customers."  (Doc. No. 18 at 22.)  But this Court "may consider *only* the allegations contained in the pleading to determine its sufficiency."  *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 (3d Cir. 2016) (emphasis added and citation omitted).  When this and similar extraneous assertions are excluded, BrightView's brief—which includes few citations to the Complaint itself—loses much of its persuasive value.  (*See* Doc. No. 18 at 22–23 (citing the Complaint only once in its discussion and failing to explain how the cited portion suggests Iatzko violated the confidentiality and non-solicitation provisions).)

## V. CONCLUSION

In sum, BrightView has not put forth factual allegations that "raise a reasonable expectation that discovery [will] reveal evidence" that Iatzko breached or is at risk of breaching the nondisclosure and non-solicitation provisions in the Agreement. *Connelly*, 809 F.3d at 789. Iatzko's partial motion to dismiss is thus granted. An appropriate order follows.